TOLLEF K. FOSSUM v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

| 80 | 9 |
| 84 | 504 |

May 25, 1900.

Nos. 12,169—(76).

**Diversion of Surface Water.**

This was an action to recover damages for the wrongful acts of the defendant in diverting the water from rain and melting snow from a natural channel, and casting it in destructive quantities upon plaintiff's land.

**Question for Jury.**

1. *Held*, that the evidence was sufficient to justify the trial court in submitting to the jury the question whether the water in question from rain and melting snow was accustomed to flow through a natural and well-defined channel.

**Charge to Jury.**

2. *Held*, further, following McClure v. City of Red Wing, 28 Minn. 186, that the court did not err in charging the jury that, if the water was so accustomed to flow in such natural and well-defined channel, the defendant had no right to obstruct and divert the water to the injury of the plaintiff.

**Measure of Damages.**

3. Upon the record of this case, it is *held* that the trial court correctly ruled that the injuries to the plaintiff's land must be regarded as permanent, and that the measure of his damages was the depreciation in its value caused thereby.

[1] Reported in 82 N. W. 979.

## Competency of Expert Witness.

4. The question of the competency of a witness to give expert evidence is largely in the discretion of the trial court. Rule applied, and *held* that it was not reversible error for the trial court to sustain an objection to the competency of such a witness.

Action in the district court for Fillmore county to recover $400 damages for filling up a culvert, diverting water, and discharging it on plaintiff's land. The case was tried before Kingsley, J., and a jury, which rendered a verdict in favor of plaintiff for $125. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*Wells & Hopp,* for appellant.

An owner may improve his land for the purposes for which such land is ordinarily used, and may do what is necessary for that purpose. He may build on it, or raise or lower its surface, even though the effect may be to prevent surface water which before flowed upon it from going upon it, or to draw from adjoining land surface water which would otherwise remain there, or to shed surface water over land on which it would not otherwise go. O'Brien v. City of St. Paul, 25 Minn. 331; Jordan v. St. Paul, M. & M. Ry. Co., 42 Minn. 172; Brown v. Winona & S. W. Ry. Co., 53 Minn. 259; St. Paul & D. R. Co. v. City of Duluth, 56 Minn. 494; Gilfillan v. Schmidt, 64 Minn. 29; Atchison v. Hammer, 22 Kan. 763; Taylor v. Fickas, 64 Ind. 167, 31 Am. R. 114, and cases in note; Gannon v. Hargadon, 10 Allen, 106; Johnson v. Chicago, 80 Wis. 641; Gray v. McWilliams, 98 Cal. 157, 21 L. R. A. 593, and note; Barkley v. Wilcox, 86 N. Y. 140. Defendant having legal right to divert the flow of surface water, plaintiff is not entitled to damages resulting therefrom. Taylor v. Fickas, supra. Placing the culvert in defendant's roadbed is according to the natural drainage of the land, and the fact that defendant at the time, or some time subsequent to the building of said road, located a culvert some distance west of the new one does not give plaintiff the right to remove, or estop defendant from removing, the culvert to where it now is. See Canton Iron Co. v. Biwabik Bessemer Co., 63 Minn. 367.

*G. W. Rockwell,* for respondent.

Defendant having acquiesced in and maintained this channel for more than twenty years, was estopped from changing it. Canton Iron Co. v. Biwabik Bessemer Co., 63 Minn. 367; Schnitzius v. Bailey, 48 N. J. Eq. 409; Ross v. Mackeney, 46 N. J. Eq. 140. Defendant had no right to divert the water from the regular channel, and discharge it on plaintiff's lands at a place where it did not before flow, or to collect the water into a ditch and discharge it in a volume upon the lower land to its injury,—not even on the ground that it is more beneficial to the lower estate. Illinois v. Miller, 68 Miss. 760; 24 Am. & Eng. Enc. 928; East St. Louis v. Eisentraut, 134 Ill. 96; Osten v. Jerome, 93 Mich. 196; Baltimore v. Ranstead, 78 Md. 501. The course uniformly followed by surface water in flowing from one tract to another is a water course within the rule preventing changing the channel so as to obstruct the flow from the dominant estate. Ribordy v. Murray, 70 Ill. App. 527. A man must so use his own property as not unnecessarily to injure others; he may not turn water in destructive quantities upon adjoining lands. O'Brien v. City of St. Paul, 25 Minn. 331, 335; Rychlicki v. City, 98 Mo. 497. The fact that the old channel sometimes filled up and overflowed its banks does not make it less a natural water course. This cannot be treated as mere surface water accumulated on defendant's right of way. It was a natural water course, where the water from the bluffs for more than twenty years had flowed, nor is it a case where defendant in the improvement of its property sheds surface water upon plaintiff's premises. Weaver v. Mississippi & R. R. Boom Co., 28 Minn. 542; McClure v. City of Red Wing, 28 Minn. 186. The act of defendant in entering on plaintiff's premises and digging the ditch being wrongful, it is liable for all injuries which are the natural or proximate consequences of, or can be traced to, the wrongful act. Croco v. Oregon, 18 Utah, 311; 3 Sutherland, Dam. (2d Ed.) 2661, 2662.

START, C. J.

The defendant's railway crosses the farm of the plaintiff from northeast to southwest at the foot of a bluff. From the top, and along the side of this bluff, water from rain and melting snow flows

down to and along the north side of the defendant's roadbed. The plaintiff claims that for some twenty years prior to April, 1898, the defendant maintained a culvert under its roadbed across a well-defined natural channel, along and through which such water was accustomed to flow to the river, doing no injury to the plaintiff's land; that on the date stated the defendant wrongfully filled up the channel and culvert, and placed a new culvert under the roadbed at a point some one hundred twenty-five feet east of the old one; that it also dug a ditch leading from the natural channel at the point where the old culvert was filled up to the new culvert, thereby diverting the water from the natural channel, and discharging it in destructive quantities upon his cultivated field. This action was brought to recover the damages sustained by the plaintiff by reason of such alleged unlawful acts. Verdict for the plaintiff in the sum, of $125, and the defendant appealed from an order denying its motion for a new trial.

The assignments of error, with one exception, raise two general questions: First. Did the trial court err in its charge to the jury, and refusal to charge, as to the defendant's right to divert the water by means of the ditch and culvert in question? Second. Did it submit to the jury the proper rule for assessing the plaintiff's damages?

1. Upon the first question the court charged the jury as follows:

"The first question, then, for you to determine is this: *Did the water which flowed down the side of this hill in times of rainfall and the thawing of snow flow down through a natural and well-defined channel or did it not? If it did, the defendant had no right to change the flow of that water so as to produce injury to the plaintiff.* If it did not flow down through a natural well-defined channel, but discharged itself generally upon the right of way of the defendant, then the defendant could provide for its discharge from that right of way in such a manner as it saw fit."

The defendant excepted to so much of the instruction as we have italicized, and also excepted to the refusal of the court to give this request:

"That if the jury find from the evidence that it was reasonably necessary for the defendant to so improve its property to render it

less hazardous, and to make it safe to operate its railroad, to prevent the washing of gravel and stones upon its track, to divert the flowage of surface water from the ditch leading from the old or west culvert to the new ditch and east culvert across its right of way and onto the plaintiff's premises, the jury must find for the defendant on this branch of the case."

It is obvious that, if the court was justified in giving the instruction excepted to, it was not error to refuse the special request, for they were radically inconsistent. Besides, the court charged the jury, as to the rights of the defendant in case the jury found that the water was not accustomed to flow through a natural and well-defined channel, much more favorably to it than the request or the law would warrant; for the charge was to the effect that, in case there was no natural channel, the water was simply surface water, and the defendant had the right to get rid of it as it pleased, without reference to its own necessities or the rights of others.

The question, then, reduces itself to this: Did the court err in giving that part of its charge excepted to? The defendant claims that it was error to give this instruction, because the evidence was insufficient to justify a finding that the water was accustomed to flow in a well-defined natural channel at the point where the old culvert was placed. The evidence shows that the locus in quo, which is in the valley of the Root river, is bluffy, and broken with ravines and sags running down the sides of the bluff to the river. The evidence is conflicting whether there was a ravine or well-defined natural channel leading from the bluff to the old culvert, as plaintiff claimed, but the evidence was clearly sufficient to sustain a finding by the jury that the channel existed as claimed. The fact that the channel and culvert, during heavy storms, would clog and overflow, and cast sand and gravel upon the track of the defendant, is not conclusive that the natural channel or drainage was not through the old culvert, as claimed by plaintiff. Such fact indicates the inadequate capacity of the culvert, rather than the nonexistence of the channel at that point.

The verdict, in connection with the instruction of the court, necessarily establishes the fact that the water, prior to the acts of the defendant complained of, was accustomed to flow through a

natural and well-defined channel. Such being the fact, the question is whether the defendant had a right to obstruct this channel, and by means of the ditch and the new culvert divert the water, and cast it upon the land of the plaintiff to his injury. In this respect this case cannot be distinguished from McClure v. City of Red Wing, 28 Minn. 186, 9 N. W. 767. Following that case, we hold that the usual rules as to mere surface water do not apply to this case, and that the defendant had no right to divert the water from its natural channel without providing adequate means to carry it off without injury to the plaintiff. It follows that the trial court correctly instructed the jury, and did not err in refusing the defendant's request.

2. The trial court charged the jury that the measure of damages was the difference in the value of the plaintiff's farm before and after the acts of the defendant were committed; or, in other words, that the damages were to be assessed on the basis that the injury was permanent. This ruling is assigned as error.

If the injuries complained of are not permanent in their nature, the measure of damages would be the diminution of the rental value of the land by reason thereof to the commencement of the action. Jungblum v. Minneapolis, N. U. & S. W. R. Co., 70 Minn. 153, 72 N. W. 971. Therefore, unless the injuries in question are permanent, or were treated so on the trial, the instruction was erroneous. The answer of the defendant alleged that the change in the location of the culvert, the making of the ditch, and the discharge of the water through the new culvert, were necessary in order to render defendant's property useful for the purposes for which it was acquired and constructed. The defendant also offered evidence on the trial tending to show that the change complained of was made because the original construction rendered the roadbed unsafe. And the trial court, in overruling plaintiff's objection to the admission of such evidence, said:

"If it be true that the culvert, where it was previously located, was located in such a place as to render the operation of the railroad very dangerous and hazardous, and for that reason the railroad company moved it to the place where it now is, and it renders the use of the railroad property less hazardous and dangerous than

it was before, then it is an injury of a permanent character, and the rule of damage is the depreciation or diminution of the value of the plaintiff's farm in consequence of it, and it is in that view that I regard the evidence competent and material."

The defendant's counsel expressed no dissent to this view of the case. It is also to be noted that all of the evidence on the part of the plaintiff as to his damages was upon the assumption that the injuries were permanent, and it was received without objection. Upon the whole record, the trial court was justified in instructing the jury that the damages were permanent in their character, and it did not err in its charge as to the measure of damages.

3. The defendant also assigns as error the ruling of the trial court in sustaining an objection to the competency of one of its witnesses to testify as to the value of plaintiff's land and damages. The question of the competency of a witness to give expert evidence is largely in the discretion of the trial court, and its decision of the question will not be reversed by this court, unless it is manifestly against the weight of the evidence. Blondel v. St. Paul City Ry. Co., 66 Minn. 284, 68 N. W. 1079. The evidence as to the competency of the witness was such that the trial court might well have found him competent, but it was far from conclusive, and we cannot hold that it was reversible error to sustain the objection.

Order affirmed.