LARS K. LARSON v. GEORGE A. LAMMERS and Others.[1]

October 19, 1900.

Nos. 12,380—(68).

**Flooding Growing Crops.**

In an action to recover damages for the flooding of land, whereby the growing grass and crops thereon were destroyed, *held*:

**Verdict.**

1. That the evidence was sufficient to sustain the verdict for the plaintiff.

**Measure of Damages.**

2. The measure of plaintiff's damages was the value of the grass and crops at the time they were destroyed, or, if it was impracticable to show such value, the diminution in the rental value of the land by reason of the injury thereto.

**Admission of Evidence.**

3. That the trial court erred in its rulings as to the admissibility of evidence on the question of damages.

Appeal by defendants from an order of the district court for Beltrami county, Holland, J., denying a motion for judgment notwithstanding the verdict or for a new trial. Reversed.

*H. Steenerson*, for appellants.

*Henry J. Gjertsen*, for respondent.

START, C. J.

This action was brought to recover damages for the overflow of plaintiff's land, situated one-half of a mile south of the river Clearwater, in the county of Beltrami, caused, as plaintiff claims, by the

[1] Reported in 83 N. W. 981.

operation of two certain dams maintained by the defendants in the river above the plaintiff's land. Verdict for the plaintiff for $100, and defendants appealed from an order denying their alternative motion for judgment notwithstanding the verdict or for a new trial.

1. The first claim of the defendants is that the verdict is not sustained by the evidence. There was evidence tending to show that the defendants maintained the dams in the river for the purpose of aiding in driving logs therein; that they raised the gates in the dams, and let the accumulated water flow out, from May 15 to June 15, 1898; that during this time the plaintiff's land was flooded by the river overflowing its banks; that it was a dry spring, and no rains to account for the unusual rise of the river. In the absence of evidence establishing any other cause for the unusual volume of water in the river following the opening of the gates in the dams, the evidence is sufficient to sustain the finding of the jury that the flooding of the plaintiff's land resulted from the act of the defendants in collecting the water by means of the dams, and then opening the gates, and discharging the water in greatly increased volumes.

2. It is also urged by the defendants that the trial court erred in its rulings as to the admissibility of evidence to prove the plaintiff's damages. There was evidence on the part of the plaintiff tending to show that, immediately prior to the flooding of his land, he had a growing crop of grass thereon, consisting of one hundred and forty-six acres of redtop, bluejoint, and wild peas, an acre and a half of corn, and two acres of flax, all then growing and in good condition; and that all of the grass and growing crops were destroyed by the action of the water. There was no evidence of any permanent injury to the land, or other injury, except the loss of crops, nor that the land would be permanently and annually flooded by the maintenance and operation of the dams.

The trial court permitted the plaintiff, over the objections and exceptions of the defendants, to show how many bushels of corn and flax per acre he could have raised if his land had not been flooded, and, further, that his farm was depreciated in value in the sum of $1,300 by being flooded. These rulings were manifestly erroneous, for there was no permanent injury to the land, nor evidence that the injury would recur each year. Nor could the dam-

ages be estimated by reference to events occurring subsequent to the loss of the crops, such as the average yield of similar crops, and their market value when matured and secured. The plaintiff's damages, in view of the facts of this particular case, were the value of his growing crops at the time they were destroyed, or, if it was impracticable to show such value, the diminution in the rental value of the land by reason of the injury thereto. He was not entitled to both. Byrne v. Minneapolis & St. L. Ry. Co., 38 Minn. 212, 36 N. W. 339; Ward v. Chicago, M. & St. P. Ry. Co., 61 Minn. 449, 63 N. W. 1104; Jungblum v. Minneapolis, N. U. & S. W. R. Co., 70 Minn. 153, 72 N. W. 971; Burnett v. Great Northern Ry. Co., 76 Minn. 461, 79 N. W. 523.

The plaintiff, while practically conceding that the trial court erred in its rulings here in question, urges that it was error without prejudice. He claims that evidence was received without objection that the usual average yield of the grass crop on the whole one hundred forty six acres was three tons to the acre, and that the defendants' own evidence shows that hay stumpage—that is, the right to enter upon the land and cut the grass thereon for hay— was worth fifty cents per ton. Hence, upon the undisputed evidence, the plaintiff was entitled to more damages than were awarded to him. The evidence pretty conclusively establishes the proposition that hay stumpage was of the value of at least fifty cents per ton. But as to the character of the plaintiff's land, and the quality and kind of grass growing thereon, it is radically conflicting. There was evidence on the part of the defendants tending to show that all except forty acres of the plaintiff's land was a slough, with no redtop or bluejoint on it; that the forty acres were worth only five dollars an acre, and the balance of the land no more than one dollar per acre. It not only does not conclusively appear from the record that the plaintiff was entitled to recover at least one hundred dollars damages, but, in view of the fact that the jury were not instructed as to the measure of damages, it is impossible to determine from the record the basis of the verdict.

We therefore are constrained to hold that the errors complained

of were prejudicial, and that the order appealed from must be reversed and a new trial granted.   So ordered.