## JOHN C. LYNCH v. MINNESOTA POWER & LIGHT COMPANY.[1]

May 18, 1928.

No. 26,919.

**Verdict sustained.**
    1. Evidence considered and *held* sufficient to sustain the recovery of damages.

**Measure of damages for injury to hay crops on flooded land.**
    2. Plaintiff brought suit to recover damages to his meadow land for a period of two years, claimed to have been caused by the maintaining of a permanent dam in a stream or waterway and to have resulted in loss of hay crops for the two years and in injury to the sod

[1]Reported in 219 N. W. 459.

and growth of grass on the meadow by the flooding thereof during that time. *Held* that the measure of damages was the value of the hay crops lost during the two years and, in addition thereto, the diminution in the market value of the land, so far as it resulted from the injury to the sod and land itself by the flooding during that period.

Damages, 17 C. J. p. 893 n. 69, 70.
Waters, 30 Cyc. p. 690 n. 1; p. 692 n. 11.
Waters, 40 Cyc. p. 690 n. 1; p. 692 n. 11.

Defendant appealed from a judgment of the district court for Crow Wing county, Wright, J. Affirmed.

*Washburn, Bailey & Mitchell,* for appellant.

*Ryan, Ryan & Ryan,* for respondent.

Olsen, C.

Defendant appeals from the judgment herein.

Plaintiff brought this action to recover damages for the flooding of his land in the years 1924 and 1925, claimed to have been caused by a dam maintained by the defendant on the Gull River at a point some ten miles below the land. Defendant's motion for a directed verdict at the close of the evidence was denied. A verdict was returned in favor of the plaintiff. Defendant then moved for judgment notwithstanding the verdict or, if that be denied, then for an order reducing the verdict to $200, and that motion was denied. Judgment was then entered on the verdict, and defendant appealed.

Defendant, by its assignment of errors, contends that the court erred in denying its motion for a directed verdict and the motion for judgment notwithstanding the verdict, on the ground that the evidence is insufficient to sustain any verdict in plaintiff's favor; and further, that the court erred in permitting the jury to allow damages both for loss of hay crops and for permanent injury to the land, and in denying its motion for a reduction of the verdict, on the ground that duplicate damages were allowed.

1. An examination of the record leads to the conclusion that there is evidence sufficient to justify the jury in finding that the maintaining of defendant's dam caused flooding of plaintiff's land in the years 1924 and 1925, and that thereby the hay crops thereon for those years were to a large extent destroyed. The evidence to

show that the presence of the dam caused the flooding is not especially strong. The jury might well have found otherwise. However it was an issue of fact; and, under the rule governing this court in reviewing findings of a jury or a court upon fact issues, it cannot be said that the verdict on this issue is not sustained. Defendant's evidence, that a horizontal line projected up stream from the top of the dam will strike the surface of the water in the stream, at ordinary stage, about 1,000 feet before plaintiff's land is reached, has probative value, but would not seem conclusive. The same may be said as to the evidence of the amount of water discharged from the government dam up above the land. The condition of the stream as to the growth of weeds and vegetation therein, as affecting the flow of the water at the time of the flooding, would apparently be a hazard incident to the maintaining of the dam.

2. As already noted, the defendant contends that the court permitted the jury to allow duplicate damages. Plaintiff in his complaint alleges that defendant maintained during the years 1924 and 1925 and now maintains this dam, and by means of such dam overflowed plaintiff's land during the years stated, to plaintiff's damage in a specified amount. The elements of damage are not otherwise stated. At the trial plaintiff presented evidence that his hay meadows were flooded so that the crop could not be cut or secured and was lost in each of the two years. He then presented evidence of what would have been the value of the standing grass crop or hay stumpage if the meadows had not been flooded. As another element of damage he presented some evidence to show that the flooding caused the soil to become spongy and soft and the sod to rot so that less hay would grow thereon, and caused weeds and brush to grow in the meadows. To show the amount of this damage, plaintiff presented evidence of one witness as to the value of the land before the flooding and its value after the flooding; in other words, the depreciation in the market value of the land. The court treated this claimed damage, by reason of alleged soft and soggy condition of the soil, rotting of sod and growth of weeds and brush, as a permanent injury to the land. The court instructed the

jury as to the general rule that, if they found that plaintiff was entitled to recover, he would be entitled to such amount of damages as would fairly compensate him for such injuries as they found he had sustained because of the maintenance of the dam during the time in question; that the plaintiff claimed two elements of injury or damages, one for the loss of the hay crops for the two years, and the other for permanent injury to the soil by reason of the flooding of the land during the two years. The court left it to the jury to determine what, if any, damages plaintiff should recover on account of either element of damages, and instructed them, if they found for the plaintiff, to make separate awards of damages for loss of hay crops and for permanent damage to the land. The instructions as to measure of damages were that, for the loss of the hay crops, the measure of damages was the value of the hay stumpage, the value of the hay crop as standing on the land before the time of cutting each year; that the measure of damages for permanent injury to the land was the difference in the market value of the land as it was before the flooding commenced and its market value immediately after the second year's flooding. The jury returned its verdict awarding $200 "for loss of hay" and $200 "for permanent injury to land."

Duplication of damages of course is not allowed. The plaintiff's cause of action is limited to recovery of damages for maintaining the dam and flooding the land for two years. He does not seek to recover damages for permanent injury because of the erection of the dam as a permanent structure. The dam was built by other parties more than ten years before and was not owned by defendant until shortly before the flooding. There is no evidence to sustain any finding that defendant added to or increased the height of the dam, and no such claim was submitted to the jury.

The general rule as to the measure of damages, where an injury to pasture or meadow land results in the destruction of grass or hay crops thereon, appears to be the value of such crops at the time and place of destruction. 17 C. J. 893. That is considered as a substitute for, or a fair method of arriving at, loss of rental value.

Larson v. Lammers, 81 Minn. 239, 83 N. W. 981; Peterson v. N. P. Ry. Co. 132 Minn. 265, 156 N. W. 121.

Where the injury results also in injury to the land itself, as by the destruction of turf and grass roots, plaintiff is entitled to a further recovery for that injury. 17 C. J. 893-894, and cases cited in notes. We have in this state, in addition to the cases above cited, a number of decisions in which the measure of damages for destruction of grass or other crops by the flooding of lands by dams or other obstructions to waterways has been stated. See, among others, Lommeland v. St. P. M. & M. Ry. Co. 35 Minn. 412, 29 N. W. 119; Byrne v. M. & St. L. Ry. Co. 38 Minn. 212, 36 N. W. 339, 8 A. S. R. 668; Jungblum v. M. N. U. & S. W. R. Co. 70 Minn. 153, 72 N. W. 971; Burnett v. G. N. Ry. Co. 76 Minn. 461, 79 N. W. 523; Fossum v. C. M. & St. P. Ry. Co. 80 Minn. 9, 82 N. W. 979; Welsch v. Elk River P. & L. Co. 157 Minn. 451, 196 N. W. 649. These cases all follow the rule that for loss of crops, whether annual cultivated crops or perennial grass crops, recovery may be had for the value of the crops destroyed, valued as crops growing and standing on the land.

The question of the measure of damages for any additional damage to the land itself by injury to or destruction of the sod and grass roots, or otherwise, has not been very clearly determined here. It is considered to some extent in the Jungblum and Peterson cases, supra.

The rule in other states varies. See 17 C. J. above cited. In the case of C. B. & Q. R. Co. v. Gelvin (C. C. A.) 238 F. 14, L. R. A. 1917C, 983, where there was destruction of grass and injury to sod and grass roots, the rule applied was that recovery could be had of the fair rental value of the land for the season during which the destruction took place and for the time necessary to restore the grass by reseeding. In Indiana and Texas the rule is stated to be that the measure of such damages is the diminution in the value of the land, so far as caused by such injury to the sod and grass roots. Perhaps the most general rule is that such recovery, in addition to recovery for the value of the grass crop destroyed, is

measured by the cost of restoring the land to its former condition, plus the rental value for the time required for so restoring the land.

Many of the cases referred to were fire cases, and the majority of them were cases where the cause of the injury was not a permanent obstruction of a waterway, but a temporary cause or event which had ceased before the action was brought. In such cases either of the rules stated would seem to result in fair compensation. The difficulty arises in applying either rule to the situation where the cause of the injury is treated as a continuing wrong and action is . brought to recover damages caused only during a limited period, so that defendant faces successive suits for damages. In the Jungblum case, 70 Minn. 153, 72 N. W. 971, decided on other grounds, the court said that if plaintiff's land has been permanently injured, he is entitled to recover the diminished value of the land due to such injury, in addition to the decreased rental value, excluding from the latter any decrease due to the permanent injury. In the Peterson case, 132 Minn. 265, 156 N. W. 121, destruction of grass sod is mentioned as an element of damage, but no questions as to measure of damages or duplicate damages appear to have been raised. Logically there appears to be no sound reason why a plaintiff in this kind of a case should not recover the loss in rental value or, as a substitute therefor, the value of hay crops destroyed during the time the land was flooded and, in addition thereto, the depreciation in the market value of the land caused by any injury to the land itself during the period of flooding, such depreciation in market value to be measured by the difference in value before the flooding commences and the value immediately after the end of the period sued for, and limited to such depreciation as was caused by the injury to the land itself.

A consideration of what plaintiff's loss was seems to so indicate. Plaintiff had lost the hay crops for two years and was entitled to recover for that loss; at the end of the period he was entitled to have his land back in the same condition as it was before the flooding. If by reason of the flooding his land was injured so that it was of less value at the time it was or should have been restored to him, then that was a loss for which he was entitled to compensation, in

addition to the rental value or loss of crops during the period of flooding. This rule, properly applied, does not result in duplication of damages. It is true that damages for injuries to the land itself, so allowed, project themselves into the future and would have to be taken into consideration in case an action should be brought for damages for flooding in the succeeding year or years. For instance, if the injury to the land, as here claimed, has destroyed the grass roots so that little or no grass crop can be grown on the land during the succeeding seasons, plaintiff has now been compensated for such injury and, in a subsequent suit, could not recover rental value or loss of hay crops except on the basis of such small crop, if any, as the land would produce in its injured condition. But that question is not before us and need not be considered. It is sufficient here to say that the allowance of the value of the hay crops lost and, in addition thereto, allowance for injury to the land itself, in the way of destruction of grass roots and injury to turf, do not result in duplication of damages.

The record indicates that the evidence as to depreciation of the market value of the land and the charge as to the so-called permanent damages may not have been sufficiently guarded in the matter of confining such damages to the specific injury or depreciation in value caused by the injury to the sod and grass roots or grass growth. But no exceptions were taken to the charge, and there is no assignment of errors either as to the charge or the reception of evidence.

Judgment affirmed.