JOHN BARTON PAYNE, DIRECTOR GENERAL OF RAILROADS, *Plaintiff in Error*, v. C. B. IVEY AND E. S. ESTES, *Defendants in Error*.

Opinion Filed March 25, 1922.

Petition for Rehearing Dismissed May 2, 1922.

1. Where a defendant demurs generally to a declaration and the demurrer is overruled before a plea in abatement to the venue is filed, the right of the defendant to plead his privilege as to the venue is waived, and a demurrer to the plea in abatement to the venue is properly sustained.

2. A charge or instruction to the jury should not impose a greater burden upon either the plaintiff or the defendant than the law requires.

3. In the absence of statutory or contract obligations imposing a greater duty as to the degree of care, prudence, foresight or attention that should be exercised by one to so use his own property as not to needlessly or unduly injure others, the rule is that ordinary care is required, or such care as ordinarily a person of average prudence would give to a matter under the circumstances, where his own right and the rights of others are involved.

4. In an action to recover damages for the destruction of a growing crop, a charge that authorizes damages to be predicated upon a finding of speculative production and profits is harmful error.

On Petition for Rehearing.

1. The proper function of a petition for rehearing is to present to the court in clear, concise terms some material point that the court overlooked or failed to consider, only this and nothing more.

2. The following are violations of the rule, that will cause a dismissal of an application for rehearing, viz: (1) To accompany the petition with, or to include therein, a written argument and citation of authorities; (2) Joining issue with the court in such application, as to the correctness of its conclusions upon points involved in its decision that were expressly considered and passed upon, and (3) An application for rehearing that re-argues the cause in advance of a permit from the court for such rehearing.

A Writ of Error to the Circuit Court for Duval County; Daniel A. Simmons, Judge.

Reversed.

Application for rehearing dismissed.

*Robert H. Anderson* and *Stafford Caldwell,* for Plaintifff in Error;

*A. H.* & *Roswell King,* for Defendants in Error.

WHITFIELD, J.—On September 6, 1920, C. B. Ivey and E. S. Estes filed their declaration in the Circuit Court for Duval County against the Florida East Coast Railway Company, a corporation, in which it is alleged that the plaintiffs are the owners of described land in St. Johns County, Florida, "situated on and near the right-of-way of defendant's railroad tracks;" (1) "that defendant * * * constructed and made a railway embankment varying in height, from to-wit: three to six feet high from point to point on said railroad down to the said property and thereby cut off, obstructed and prevented the water from flowing away from said land in its natural course, shed and direction, and by the erection of said embankment

defendant directed and diverted the waters flowing off a large area from their natural course, and forced said water southward down along the said embankment of said railroad track in large quantities and thereby caused said waters to flow upon and over said land; that at the time of the injury and damage complained of, to-wit: during the year 1920, and for a long time thereafter, plaintiffs were and are now the owners of said land; that plaintiffs had growing crops of irish potatoes on said land, and that said crops were injured and damaged by reason of the wrong of defendant in the premises as alleged;" (2) "plaintiff alleges all the allegations of the first count and further alleges; and plaintiff was also damaged in and by the loss of fertilizer in and on said land and in the loss of seed potatoes which had been planted in said land and in the loss of labor and material put upon said land and in the cultivation of said crop by reason of the wrong of the defendant in the premises as alleged;" (3) "that defendant made said ditch about four to five feet broad and about two to three feet deep and along the course of said ditch gradually widened and deepened the same and continued to widen and deepen the same until it made said ditch, to-wit: twelve to eighteen feet broad and to-wit: eight feet deep at a point or place to-wit: opposite the northwesterly boundary and portion of said land from this point or place defendant made said ditch gradually narrower and shallower until said ditch was made and narrowed to a width of to-wit: four to six feet wide and shallowed to a depth of to-wit: three feet deep, and by reason of so constructing said ditch said water was caused and forced to flow down upon and over said land to the damage of the plaintiffs;" (4) "that at and from said northerly end of said ditch and from point to point and place to place southerly along said ditch defendant made

and dug said ditch through a number of ponds and swamps and thereby gathered and took the waters from said swamps and thereby drained the waters therefrom and from large areas surrounding and contiguous thereto and thereby caused and forced said waters to flow upon and .over said land to the damage of the plaintiffs;'' (5) ''that connected with said ponds and swamps there were other ponds and swamps which formed strands, drains or gutters extending and continuing for long distances easterly from said embankment, which strands, drains or gutters formed the natural waterways and courses over a large area, and by reason of the construction of said embankment and ditch the waters from said ponds and swamps were 'diverted, directed and forced down upon and over said land, to the damage of the plaintiffs.''

A bill of particulars was filed with the declaration.

On September 6, 1920, the defendant railroad company filed a petition praying that the Director General of Railroads, as agent of the President of the United States, be substituted as defendant, the alleged injury having occurred while the railroad was being operated under the control of the Federal Government. The motion was granted and the Director General of Railroads was ordered substituted as the sole defendant in the cause, and the defendant company was discharged.

On September 25, 1920, the defendant Director General of Railroads filed a general demurrer to the declaration and also a motion to strike a portion of the first count of the declaration. The demurrer and motion to strike were on October 14, 1920, overruled and denied.

On October 16, 1920, the defendant Director General of Railroads filed a plea in abatement to the venue, alleging in effect that the Director General of Railroads is not a

resident of Duval County, and that the cause of action accrued in St. Johns County. On the same day the defendant Director General of Railroads filed pleas to the merits of the cause. A demurrer to the plea in abatement to the venue was filed, one of the grounds being that the plea was ''not offered at the proper time.'' This demurrer was sustained, and error is assigned thereon upon a writ of error taken by the defendant Director General of Railroads to a judgment awarding damages in favor of the plaintiffs at a trial on the merits of the cause.

As at the time the alleged cause of action arose the railroad was being operated by an agency of the Federal Government under the war powers, the action was improperly brought against the railroad company, and should have been brought in a proper county against the Director General of Railroads under Federal regulations providing for such actions to be brought against a Federal agency even though at the time the action was instituted the railroad had been returned to its owners.

When the Director General of Railroads was substituted as sole party defendant in the action, the suit was then in effect one against the United States under the authority of an Act of Congress conferring the right of action where causes of action arose for which the Federal Government is, under the Federal law, liable in damages.

The action might have been brought and maintained in St. Johns County where the cause of action accrued (3 Farnham on Waters, 2822), but it could not be maintained against the Director General of Railroads in Duval County without his consent, express or implied, by waiver or otherwise.

Whether or not it be conceded that Section 206 of the Transportation Act approved February 26, 1920, relates to venue as well as to rights of action against a Federal agency in courts having jurisdiction of such causes, so as to make the action maintainable in Duval County, need not be here determined, since the Director General filed a general demurrer to the declaration, which was over-ruled before he filed a plea in abatement to the venue, and this operated as a waiver of the privilege to have the action tried in St. Johns County where the cause of action arose or accrued.   Sec. 2579, Rev. Gen. Stats. 1920.

In transitory actions where a court having jurisdiction of such matters acquires jurisdiction of the person of the defendant in an action, it thereby gets jurisdiction of the subject-matter of the transitory action.   Jurisdiction of the person of the defendant in the cause may be obtained by due service of process on the defendant or by his appearance in the cause or by waiver.   Although jurisdiction is obtained of the defendant he may still plead his privilege as to venue until the privilege is expressly or impliedly waived by the defendant.   If the defendant does not reside in the State, and the cause of action arose or accrued in the State, the defendant though duly served with process and after appearance or waiver of process, may before or at the time of pleading to the merits, by plea in abatement to the venue, demand that the declaration be quashed if the transitory action is not brought in the county where the cause of action accrued.   Curtis v. Howard, 33 Fla. 251, 14 South. Rep. 812.   But where trial is had on the merits (Bucki v. Cone, 25 Fla. 1, 6 South. Rep. 160), or where there is default in pleading after appearance (Baker & Holmes Co. v. Indian River State Bank, 61 Fla. 106, 55 South. Rep. 836), or where a general

demurrer to the merits is filed and overruled (United States v. Hvoslef, 237 U. S. 1, 35 Sup. Ct. Rep. 459), the privilege of the defendant as to venue is waived and the court has power to render an appropriate judgment in the cause. 27 R. C. L. 784; Curtis v. Howard, 33 Fla. 251, 14 South. Rep. 812; Bishop v. Camp, 39 Fla. 517, 22 South. Rep. 735; E. O. Painter Fertilizer Co. v. DuPont, 54 Fla. 288, 45 South. Rep. 507.

It does not clearly appear that this is such an action that it must be maintained in the county where the land that was flooded is situated. See Archibald v. Mississippi & T. R. Co., 66 Miss. 424, 6 South. Rep. 238.

In this case the Director General of Railroads, having demurred generally to the declaration, and the demurrer having been overruled, before the plea in abatement to the venue was filed, the right of the defendant to plead his privilege as to the venue was waived, and the demurrer to the plea in abatement was properly sustained.

The essential allegations of the declaration are in effect that the defendant so constructed and made a railway embankment and thereby cut off, obstructed and prevented the surface water from flowing away from plaintiffs' land in its natural course, shed and direction, and by the erection of said embankment defendant directed and diverted the waters flowing off a large area from their natural course, and forced said waters to flow upon and over plaintiffs' land and injured the growing crops on said land; and that defendant so dug and made as specifically stated a ditch along the east side of said embankment and thereby gathered water from ponds and swamps and large areas contiguous thereto by reason of which, said water was caused and forced to flow down upon and over said land:

and that by reason of the construction of said embankment and ditch the waters from said ponds and swamps were diverted, directed and forced down upon and over plaintiffs' land to their injury.

A plea of not guilty and numerous special pleas were filed. Four of the pleas setting up (1) more than twenty years use of the embankment in substantially the same condition as that complained of, (2) skillful construction of the embankment, (3) skillful construction of the ditch so as to carry off all surface waters flowing therein and empty the same into the natural outlet, but through no fault of defendant the ditch became obstructed, (4) denial of construction of the ditch as alleged with the harmful result alleged. These four pleas were eliminated on demurrer and motion. Other pleas denying the specific allegations of construction of embankment and ditch and harmful results as alleged aver that the alleged injury was proximately caused by unusual, excessive, unexpected and unprecedented rains and without defendant's fault, with other averments that may be covered by the general issue.

It is not clear that the court erred in eliminating the plea as to twenty years similar condition of user, since the relations of the properties during these years and the effect of the embankment and ditch on surface waters adjacent to plaintiffs' land is not averred. As to prescription rights see 3. Farnham on Waters 2635.

The same may be said as to the plea of skillful construction, as it is not averred that the construction was skillful with reference to the rights of the abutting property owners.

Evidence having been adduced that was appropriate to the other eliminated pleas, no harm resulted if their rejection was error.

The court gave this charge: "The court charges you that the liability of water courses in their natural course in times of high water to do injury to adjoining property if its flow is in any manner interfered with is a matter of such notoriety that a railroad company carrying its track across such natural water course is bound to take notice of the fact; and its duty to its neighbors requires that it exercise the highest care and circumspection in making provision for the unusual stages of water for the benefit of adjoining land-owners."

If it be conceded that the evidence showed the existence of "water courses" that were crossed by the railway embankment here complained, the instruction that the defendant's "duty to its neighbors requires that it exercise the highest care and circumspection in making provision for the unusual stages of water for the benefit of adjoining land-owners," impressed upon the jury as a matter of law an erroneous and more exacting degree of care than the law imposes under the doctrine of reasonable user. See Cason v. Florida Power Co., *supra;* Florida Power Co. v. Cason, 79 Fla. 619, 84 South. Rep. 921; Brumley v. Dorner, 78 Fla. 495, 83 South. Rep. 912; Bucki v. Cone, 25 Fla. 1, 6 South. Rep. 160; 20 R. C. L. 7; 2 Elliott on Railroads §1057g.

A charge or instruction to the jury should not impose a greater burden upon either the plaintiff or the defendant than the law requires. Coombs v. Rice, 68 Fla. 499, 67 South. Rep. 143.

In the absence of statutory or contract obligations imposing a greater duty as to the degree of care, prudence,

foresight or attention that should be exercised by one to so use his own property as not to needlessly or unduly injure others, the rule is that ordinary care is required, or such care as ordinarily a person of average prudence would give to a matter under the circumstances, where his own right and the rights of others are involved. See 29 Cyc. 426; 3 Farnham on Waters pp. 2119, 2821; 21 Am. & Eng. Ency. Law (2nd ed.) 463; 1 Thompson on Negligence 42.

Other charges given predicated upon the existence in the vicinity of plaintiffs' land of ''natural water courses'' that by the defendant's railroad lateral ditches were drained and the waters forced to flow down upon and over the plaintiffs' land, are not justified by the evidence.

The court charged the jury as follows: ''The measure or rule of evidence in cases of this kind, gentlemen of the jury, is a preponderance of the evidence, and the burden is upon the plaintiffs to establish the issues in their behalf by such preponderance of the evidence. If you feel that the plaintiffs have met this burden and have established the issues in their behalf as to any one count or more of the declaration, the issues raised thereon by the pleas, then it will be your duty to find in favor of plaintiffs and assess their damages according to the instructions I have already given you. If you find that the plaintiffs have refused to meet the burden thus cast upon them and have not so established the issues in their behalf by such preponderance of evidence, then it will be your duty to find the defendant not guilty.''

Exception was taken to the middle sentence of the charge. The word ''feel'' may have been intended to be ''find.'' As used it was inappropriate.

The following charge was given: "The court charges you that, if you find from a preponderance of the evidence that the defendant is liable as alleged in the plaintiff's declaration, then it is your duty to find a verdict for the plaintiff; in arriving at the amount of this verdict, you will take into consideration the capacity of the plaintiffs' land to produce his crops as evidenced by the average yields in like crops upon the same land in previous years and similar in the neighborhood under like circumstances and conditions and also the average market value of the crop injured within reasonable limitations as to the time and the expense of harvesting and marketing a like crop; for the partial destruction of his crop you will find for the difference between its value as realized and what it would have been but for the injury less the difference between the cost of producing that obtained and that which would have been obtained but for the wrong; also for the loss of fertilizer, seed potatoes and labor used in the cultivation of his crop or that portion of his crop which was lost as a result of defendant's negligence." The rule above was announced in Lommeland v. St. Paul, M. & M. Ry. Co., 35 Minn. 412, 29 N. W. Rep. 119, and overruled in Ward v. Chicago, M. & St. P. Ry. Co., 61 Minn. 449, 63 N. W. Rep. 1104; Larson v. Lammers, 81 Minn. 239, 83 N. W. Rep. 981. See 4 Sutherland on Damages, §1023. This charge did not confine the damages to the amount of the loss at time of the injury, and apparently authorized the damages to be predicated upon a finding of speculative production and profits, which was harmful error (17 C. J. 887) even if the evidence does not show that the injury alleged was proximately caused by an unprecedented and overwhelming rainfall and not by any act or default of the defendant.

As to measure of damages, see Teller v. Bay & River Dredging Co., 151 Cal. 209, 90 Pac. Rep. 942, 12 L. R. A. .(N. S.) 267; Missouri Pac. Ry. v. Sayers, 82 Kan. 123, 107 Pac. Rep. 641, 27 L. R. A. (N. S.) 168; United States Smelting Co. v. Sisam, 112 C. C. A. 37, 191 Fed. Rep. 293, 37 L. R. A. (N. S.) 976; International Agricultural Corporation v. Abercrombie, 184 Ala. 244, 63 South. Rep. 549, 49 L. R. A. (N. S.) 415; Sedgwick on Damages, §§191, 942; 4 Sutherland on Damages 1049; 13 Cyc. 153; 8 R. C. L. 378, 380. See also 32 L. J. Q. B. 279; 35 Ark. 622; 22 Neb. 286, 299.

Reversed.

BROWNE, C. J., AND TAYLOR, ELLIS AND WEST, J. J., concur.

BROWNE, C. J.—Concurring.

I concur in the decision and opinion in this case, except in so far as it holds that the Director General of Railroads by filing a demurrer to the declaration, lost his right to enforce General Order No. 18a of April 18, 1918, by a plea in abatement.

This order is as follows: " 'It is therefore ordered that all suits against carriers while under Federal control must be brought in the county or district where the plaintiff resided at the time of the accrual of the cause of action, or in the county or district where the cause of action arose.' "

There is a notable distinction in suits between private parties, and suits of this character against the Director General of Railroads. The United States Government had taken over and was operating this railroad at the time

the cause of action accrued. No right of action existed against the Government for any loss or damage resulting from its operation of the railroad, and suit could only be maintained if the Government consented thereto, and then only in the jurisdiction, and under such circumstances and conditions as it saw fit to require.

Under General Order No. 18a the Government through the Director General of Railroads consented to be sued only ''in the county or district where the plaintiff was residing at the time of the accrual of the cause of action, or any county or district where the cause of action arose.''

There is a wide difference between a plea in abatement as to venue, when filed by an ordinary litigant and when filed by the Government of the United States. In the one, the right to have the cause tried in a particular place is a privilege which a private person may avail himself of or not as he sees fit. In the other, the consent of the Government to be tried at all, and then only in a particular place, is an absolute right as distinguished from a privilege, and General Order No. 18a in which the Government asserts its right, is not to be taken as modified or waived by anything less than another order of the Director General to that effect.

I think that the right and power of the Director General of Railroads to prescribe the venue in which he would permit himself to be sued was absolute, and was not waived or affected by his interposing a demurrer to the declaration, before filing his plea in abatement, and that the demurrer to the plea in abatement should have been overruled.

When this question was before the Judge of the Circuit Court for Duval County he had for consideration the

decisions of State and inferior Federal courts that seemed to support his ruling on the demurrer to the plea in abatement. Among these was the Supreme Court of Mississippi in the case of Alabama & V. Ry. Co. v. Journey, 122 Miss. 742, 84 South. Rep. 706. In that case there was a plea in abatement to an action brought in the 2nd District of Hinds County, wherein it was claimed that the suit should have been begun in the 1st District of Hinds County, the place where the cause of action accrued, or in the Circuit Court of Attala County, of which county the plaintiff was a resident citizen at the time the alleged cause of action accrued.

A demurrer to the plea in abatement was sustained, and on appeal to the Supreme Court of Mississippi the judgment was affirmed. The court said: ''The question raised by the plea in abatement is of some interest, and we have decided to express our views thereon. The concrete question is about this: 'Did Congress confer upon the President of the United States or the Director General of Railroads the power to fix the venue of actions against the railroads, while the same were under Federal control?' ''

After discussing this question which the court said was the crucial one, it was said: ''It seems clear to us that Congress did not delegate to the executive the power claimed by appellant, but in apt language left the law as it was before the passage of the statute. Affirmed.''

The case went to the Supreme Court of the United States and was there reversed. The court said: ''The Supreme Court of Mississippi overruled the plea in abatement on the ground that Order No. 18 exceeded the powers conferred by Congress on the President and by him on the Director General. Whether the state court

erred in so holding is the only question before us. That
it did err is clear from what we said in Missouri P. R.
Co. v. Ault (U. S. Adv. Ops. 1920-21, p. 647), 255 U. S.
——, 65 L. Ed. ——, 41 Sup.. Ct. Rep. 593, decided since
entry of the judgment under review. Section 10 of the
Federal Control Act of March 21, 1918, Chap. 25, 40 Stat.
at L. 451, 456, Comp. Stat. 3115 ¾ a, 3115¾ j, Fed. Stat.
Anne. Supp. 1918, pp. 757, 762, permitted enforcement of
liabilities against carriers while under Federal control only
'in so far as not inconsistent * * * with any order of the
President.' It was within the powers of the Director
General to prescribe the venue of suits; and the facts set
forth in the order show *both the occasion for it and that
the venue prescribed was reasonable.*'' Alabama & V. R.
Co. v. Journey, Adv. Opinions U. S. Supreme Court No.
2, Dec. 1, 1921, p. 15.

It matters not how the error in making the Florida
East Coast Railway Company instead of the Director
General of Railroads, the party defendant was brought to
the attention of the court, the order substituted · the
Director General of Railroads for the Florida East Coast
Railway as defendant, and when that was done further
proceedings were governed by General Order 18a of the
Director General of Railroads.

In an action brought by an employee against the
Missouri Pac. R. Co., a motion was made by the Railroad
Company to substitute as defendant the Director General
of Railroads. This substitution the court refused to make;
but joined the Director General of Railroads as defendant.
This the Supreme Court of the United States held to be
error, and that the application of the Missouri Pac. R. Co.
to be dismissed from the action and the Director General
of Railroads substituted in its place should have been

granted. Missouri Pac. R. Co. v. Ault, U. S. Sup. Ct. Adv. Opinions No. 16, July 1, 1921, p. 647.

It is contended by defendant in error that the Transportation Act approved February 26, 1920, authorized the bringing of this suit in Duval County.

Section 206 of the Transportation Act does not deal with venue but specifically refers to jurisdiction.

There is no question that the Circuit Court of the Fourth Judicial Circuit of Florida had jurisdiction to try this cause if the venue were properly laid, but as General Order No. 18a of April 18, 1918, contains a specific requirement that all suits shall be brought ''in the county or district where plaintiff resided at the time of the accrual of the cause of action, or in the county or district where the cause of action arose,'' the jurisdiction did not attach because the General Order was not complied with as to the venue. Where a suit shall be instituted is a matter of venue only, and is not jurisdictional. Crystal River Lumber Co. v. Consolidated Naval Stores Co., 63 Fla. 119, 58 South. Rep. 129.

As applied to courts, jurisdiction is the power to try and determine a cause properly brought and prosecuted.

Venue relates to the rights of parties to a litigated cause as to the vicinage or place, i. e., the State, county or district, wherein the action should be maintained. Curtis v. Howard, 33 Fla. 251, 14 South. Rep. 812.

Section 206 of the Transportation Act, treating of jurisdiction, cannot be construed to nullify General Order No. 18a, that regulates and determines the venue where the Federal Government elects to be sued.

On Petition for Rehearing.

TAYLOR, J.—This cause coming on for consideration upon an application of the counsel for defendants in error for a rehearing of said cause, after due consideration the court finds that the application flagrantly violates the rule laid down by this court in repeated cases commencing with Smith v. Croom, 7 Fla. 180, regulating petitions for rehearing. This rule provides that: ''The proper function of a petition for rehearing is to present to the court in clear, concise terms some material point that the court overlooked or failed to consider, only this and nothing more.''

This court has held also that the following are violations of the rule, that will cause dismissal of the application for rehearing, viz: (1) To accompany the petition with, or to include therein, a written argument and citation of authorities; (2) Joining issue with the court in such application, as to the correctness of its conclusions upon points involved in its decision that were expressly considered and passed upon, and (3) An Application for rehearing that re-argues the cause in advance of a permit from the court for such rehearing. Texas Company v. Davidson, 76 Fla. 478, 80 South. Rep. 558.

The application for rehearing violates the rule in all of the particulars above named, and is, therefore, hereby dismissed.

BROWNE, C. J., AND WHITFIELD, ELLIS AND WEST, J. J., concur.